IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE MOYER | : | CIVIL ACTION |
| v. | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | NO. 04-4998 |

REPORT AND RECOMMENDATION

JACOB P. HART                                                             DATE: August 15, 2005
UNITED STATES MAGISTRATE JUDGE

      Bruce Moyer brought this action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). The parties have filed cross-motions for summary judgment. For the reasons that follow, I recommend that Moyer's motion be denied and the Commissioner's granted.

I.     Factual and Procedural Background

      Moyer was born on June 13, 1950. Record at 74. He completed college. Record at 101. He worked in computer programming from 1979 until June, 2001, when he was laid off. Record at 96, 32.

      On September 26, 2002, Moyer filed an application for benefits claiming disability since June 15, 2001, on the basis of Lyme Disease. Record at 74, 95. His application was denied by the state agency. Record at 58. Moyer then requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). Record at 65.

      A hearing was held before an ALJ on August 28, 2003. Record at 26. However, the ALJ denied Moyer's claim, in a decision dated October 27, 2003. Record at 16. The Appeals Council denied Moyer's request for review, allowing the ALJ's decision to stand as the final decision of the Commissioner. Record at 5. Moyer subsequently filed this action.

II.	Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1).  As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (I) At the first step, we consider your work activity if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.  (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you

are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

At stage five, an appendix to the Social Security regulations provides several tables, known as the medical-vocational guidelines, or "the Grids," which cross-reference a claimant's exertionary level by his or her age, education, and skill level to reach a conclusion as to whether the claimant is capable of doing work other than that previously performed. 20 CFR § 404, Subpart P, Appendix 2; SSR 83-10. Each entry is a rule, and where a rule applies, it directs a decision of "disabled" or "not disabled." SSR 83-10.

III.     The ALJ's Decision and Moyer's Motion for Summary Judgment

In her decision, the ALJ found that Moyer suffered from the severe impairments of bilateral epicondylitis, residuals from Lyme Disease, carpal tunnel syndrome, and a somatoform disorder. Record at 19. She then found:

> The claimant has the following residual functional capacity: No limitations standing, walking, and sitting; can lift and carry 20 pounds occasionally, 10 pounds frequently; can push and pull occasionally; limited to simple, repetitive work because of mental health problems.

Record at 23, ¶ 7.

The ALJ went on:

> Based on an exertional capacity for unskilled light work, and the claimant's age, education and work experience, Medical-Vocational Rule 202.14, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."
>
> The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

Record at 20, ¶¶ 13 and 14. She concluded on this basis that Moyer was not disabled. Record at 24, ¶ 15.

In his motion for summary judgment, Moyer maintains that the ALJ erred in deciding this matter under the Grids. He also argues that the ALJ improperly failed to credit the opinion of his treating psychologist that he suffered from a somatic disorder. Finally, he maintains that the ALJ improperly disregarded his testimony as to the pain and fatigue he experiences.

IV.   Discussion

A.   The ALJ's Use of the Grids

Moyer is correct in arguing that the ALJ erred in her use of the Grids. However, remand would be an empty formality because the record already contains all the information the ALJ needed to use the Grids correctly.

The Grids can be used without recourse to a vocational expert only where a claimant suffers from exclusively exertional limitations. Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000). In this case, Moyer alleged extensive pain and fatigue, which are clearly non-exertional impairments. Even assuming that the ALJ did not find Moyer's claims in this regard credible, she conceded that Moyer suffered from the non-exertional impairment of "mental health problems." Record at 19, ¶ 23. Although she claimed to be using the Grids as a "framework for decisionmaking," rather than relying upon them outright, she did not cite testimony from a vocational expert, as required. For that reason, her use of the Grids was impermissible.

However, even though the ALJ did not refer to a vocational expert in her enumerated findings, or even mention one in the body of her decision, a vocational expert actually did appear at the hearing. Record at 51. He was questioned almost entirely by Moyer's attorney. Id. Nevertheless, the ALJ asked him the one crucial question: whether Moyer's capabilities as outlined by John Gavazzi, Psy.D., the agency specialist, precluded all work. Record at 52, and

4

see 217.  The vocational expert replied that it would not, saying "it would be reasonable to assume unskilled work."  Record at 52.

Thus, the ALJ had before her vocational expert testimony indicating that the non-exertional impairments which she found to be substantiated by the record would permit unskilled work.  Therefore, her determination that Moyer retained the RFC to engage in "unskilled light work" was actually supported by vocational testimony, as required in a case such as this one, involving non-exertional impairments.  Accordingly, the ALJ was entitled to use Medical-Vocational Rule 202.14 as a framework for deciding that Moyer was not disabled.

In conclusion, the ALJ's decision, as written, is inadequate because of her failure to rely on vocational expert testimony.  However, there is little point in remanding the matter for correction of this error, because it is clear that the required testimony was taken at the hearing.

B.     The ALJ's Treatment of Moyer's Treating Psychologist

David McGalliard, Ph.D., Moyer's treating psychologist, originally diagnosed Moyer with a "Pain Disorder associated with both psychological factors and a general medical condition."  Record at 187.  In other words, he believed that Moyer's musculo-skeletal pain was primarily responsible for his mental condition.  Record at 322.  "A trial of cognitive therapy and pain management was implemented" to help Moyer cope with his physical limitations.  Id. and see Record at 40-41 ("ALJ:  You've been seeing Dr. McGalliard for over a year.  How do you feel that you're doing, mentally and emotionally?  MOYER:  I feel like I've accepted my condition ... I think I've accepted that I only function at 25 to 30 percent ..." ).

In a letter dated August 26, 2003, however, two days prior to the hearing before the ALJ, Dr. McGalliard wrote that he now believed Moyer to suffer from a somatoform disorder,

meaning that his symptoms of physical disease were in substantial part psychological in origin. Id.; Dorland's Illustrated Medical Dictionary 28th Ed. (1994) at 1545.

Despite the changed diagnosis, Dr. McGalliard reaffirmed his views on Moyer's limitations as set forth in a medical source statement he had completed on December 11, 2002. In this statement, Dr. McGalliard had indicated that Moyer suffered from poor memory, sleep disturbances, social withdrawal, decreased energy, obsessions or compulsions, anhedonia, psychomotor agitation, persistent anxiety, and difficulty thinking or concentrating. Record at 187.

As to work-related capacities, Dr. McGalliard indicated that Moyer had "poor or no" ability to maintain attention for two hour segments, maintain regular attendance, complete a normal workday or workweek, deal with normal work stress, or deal with the stress of semiskilled and skilled work. Record at 190-191. He also found that Moyer had extreme restriction of activities of daily living and deficiencies of concentration, persistence and pace. Record at 191. He indicated that Moyer had "four or more" episodes of decompensation in work-like settings. Id.

The vocational expert testified at the hearing that these limitations, if accepted, would preclude all employment. Record at 51-52. However, the ALJ did not accept Dr. McGalliard's findings, stating that they were inconsistent with "his own findings, the clinical evidence as a whole, or the clamant's demonstrated functioning contemporaneous with this report." Record at 19.

6

      The ALJ also wrote:

> The claimant testified that his attorney referred him to the psychologist, and that the functional assessments and related reports were apparently generated at the attorney's request. No treating physician mentioned any significant problems with anxiety (with the exception of the single reference to explain his neurological complaints), or any cognitive dysfunction, or referred him for mental health treatment. Because the psychologist's reports were clearly elicited for the purpose of establishing disability and there is no other evidence to show any significant mental impairment, this assessment is worthy of limited probative worth.

Record at 20.

      Moyer argues that the ALJ's reasons for discounting Dr. McGalliard's evidence are unfounded. The opinion of a treating physician is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. 20 CFR § 404.1527(d)(2). Here, however, the ALJ concluded that Dr. McGalliard's opinion did not meet these criteria.

      The ALJ's conclusion in this regard is adequately supported by substantial evidence. Moyer is correct in pointing out that *all* forms completed by physicians to send to the Social Security Administration are "elicited for the purpose of establishing disability" – why else would they be produced? Nevertheless, the ALJ was entitled to take into consideration the timing and circumstances under which Dr. McGalliard issued his findings and diagnoses, particularly the fact that Moyer sought psychological counseling only when it was suggested by his attorney, and that Dr. McGalliard changed Moyer's diagnosis immediately before the hearing, conceivably to accommodate the lack of medical evidence supporting Moyer's claims of physical illness, which is discussed more fully in the next section.

These circumstantial observations would not, alone, be a sufficient basis upon which to reject Dr. McGalliard's evidence. However, the ALJ also cited "the claimant's demonstrated functioning." She pointed out that Moyer's wife indicated in a November 19, 2002, questionnaire that her husband "was a deacon at their church, belonged to a Bible study group, and attended evening meetings and choir practice." Record at 20; 113. Mrs. Moyer also indicated that Moyer: "reads, does household chores, yard work, swims, walks, sometimes prepares or cleans up dinner [... and] tackles cleaning projects when he feels up to it" as well as studying several foreign languages  Record at 113-114.

The ALJ did not mention, but might also have noted, that Moyer traveled to Austria and Switzerland with his church the summer of his hearing, and the summer before, to help run a vacation Bible camp for the children of missionaries. Record at 48-49. Clearly, the evidence as to Moyer's activities indicates that his limitations were not as extreme as those found by Dr. McGalliard.

Further, John D. Gavazzi, Psy.D., a reviewing agency psychological expert, indicated in a Psychological Review Technique form dated January 29, 2003, that Moyer had only moderate difficulties in maintaining concentration, persistence and pace, and mild difficulties in maintaining social functioning. Record at 227. He did not find Moyer limited in his activities of daily living, nor did he find Moyer had suffered from episodes of decompensation. Id. As a whole, therefore, substantial evidence supports the ALJ's decision not to fully credit Dr. McGalliard's findings.

    C.    <u>The ALJ's Assessment of Moyer's Credibility</u>

    As to Moyer's credibility, the ALJ wrote in her decision:

> The claimant's testimony has not been accepted as credible. It is noted that he filed for disability benefits immediately after being laid off, although he was able to work until that lay off and has never articulated how his condition changed. Despite his numerous complaints, x-rays and MRIs of nearly every part of his body have failed to reveal significant problems beyond those enumerated above (his elbows and carpal tunnel syndrome). The surgery on his right elbow was successful and further improvement in his overall condition was expected through physical therapy, but he declined to follow the therapist's advice regarding his swimming activity. A neurological examination by Dr. Skubick found his symptoms "unimpressive" and even his orthopedist commented on the "chronicity of his complaints." And, as discussed above, the activity statements from himself and his wife belie his claim of total incapacity.

Record at 21. (Internal citations omitted).

    Credibility determinations as to a claimant's testimony are for the ALJ to make, and are therefore entitled to great weight. <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1983); <u>Cotter v. Harris</u>, 642 F.2d 704, 705 (3d Cir. 1981). Even if an ALJ concludes that a medical impairment exists which could reasonably cause the alleged symptoms, he must evaluate the intensity and persistence of the symptoms, and the extent to which they affect the individual's ability to work. 20 CFR § 404.1529(b) and (c); <u>Hartranft v. Apfel</u>, <u>supra</u>.

    As the ALJ stated, Moyer's diagnostic tests for physical ailments revealed nothing abnormal. In a report dated September 28, 1999, Dr. Daniel Skubick of the Headache/Pain Center indeed described Moyer's neurologic examination as "unimpressive." Record at 312. On September 30, 2002, rheumatologist Mark Lopatin, M.D. wrote: "At this point, I have no evidence of an underlying rheumatologic process accounting for Mr. Moyer's fatigue. ... Unfortunately, I have little else to offer him at this time." Record at 153. An October 31, 2002, CT scan of the brain was unremarkable. Record at 176.

9

On November 25, 2002, Moyer fell and was taken to the emergency room at Thomas Jefferson University Hospital. Record at 241. However, subsequent testing, including an EKG, a heart ultrasound and a transcranial Doppler, yielded normal results. Record at 292, 294, 295. Similarly, a December 19, 200, EKG was normal. Record at 300. As the ALJ noted, David R. Steinberg, an orthopedist, wrote of Moyer in December, 2002: "Given the chronicity of his complaints ... it is unclear whether there will be ay definitive treatment that can significantly relieve his pain." Record at 181.

In a January 29, 2003, report, Dr. Yan Qi, a neurologist, wrote that, although Moyer complained of "generalized body hypersensitivity with feeling numbness", the etiology was unclear, adding: "I was concerned that possibly this was related to his anxiety. I doubt the patient suffers from a peripheral polyneuropathy." Record at 300. He prescribed anti-anxiety medication. Id.

Moyer argues that this lack of medical corroboration of his symptoms is irrelevant in light of Dr. McGalliard's diagnosis of a somatoform disorder. However, even if this diagnosis is completely valid, the ALJ was entitled to disbelieve Moyer's testimony to the extent that he represented himself as completely disabled. As the ALJ pointed out, statements made by him and his wife regarding his activities (as discussed above) suggested that he was able to participate in many activities in his daily life. In sum, there is no basis upon which to challenge the ALJ's view on Moyer's credibility.

V.  Conclusion

In accordance with the above discussion, I make the following

**R E C O M M E N D A T I O N**

AND NOW, this 15th day of August, 2005, it is RESPECTFULLY RECOMMENDED that Plaintiff's motion for summary judgment be DENIED; and it is further RECOMMENDED that Defendant's motion for summary judgment be GRANTED.

BY THE COURT:

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE MOYER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | NO. 04-4998 |

O R D E R

J. CURTIS JOYNER, J.

      AND NOW, this _____ day of _____, 2005, upon consideration of the Plaintiff's Motion for Summary Judgment, and the Defendant's Motion for Summary Judgment, and after careful review of the Report and Recommendation of United States Magistrate Jacob P. Hart, IT IS ORDERED that:

    1.  The Report and Recommendation is APPROVED and ADOPTED.

    2.  The Plaintiff's Motion for Summary Judgment is DENIED.

    4.  The Defendant's Motion for Summary Judgment is GRANTED.


BY THE COURT:


_____
J. CURTIS JOYNER, J.